JUAN ÁLVAREZ IRIZARRY, ETC., Plaintiff and Appellant, v. GILBERTO IRIZARRY MORALES and FERMÍN IRIZARRY, ETC., Defendants and Appellees.

No. 11717. Submitted June 3, 1957.—Decided June 24, 1957.

61

*Pedro Nelson Colberg* and *Raúl Ramos Torres* for appellant.
*Yamil Galib Frangie* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the
Court.

On Saturday morning, August 22, 1953, Fermín Irizarry
was picking coffee in his farm located at Barrio "Llanos
Tuna" of the municipality of Cabo Rojo. Irizarry had taken
with him a revolver and had put it on top of a coffee sack
near a footpath leading to his farm. Félix Álvarez passed
by a road adjoining said farm and provoked Irizarry by
words engaging in a fist fight. While this was going on,
Gilberto, son of Fermín Irizarry, arrived with some coffee
for his father. This Gilberto, who at the time was 17 years
old, took the gun which was on the coffee sack and fired some
shots at Félix Álvarez wounding him and causing his death.

Juan Álvarez Irizarry and Heriberta Seda, parents of
the deceased Félix Álvarez, filed an action in the Superior
Court, Mayagüez Part, against the aforesaid Gilberto Iri-
zarry and his father Fermín Irizarry claiming damages for
the death of their son Félix Álvarez Seda.[1]

After a trial on the merits the lower court entered judg-
ment ordering the minor-defendant Gilberto Irizarry to pay
plaintiffs the sum of $3,000 as compensation for all the dam-
ages suffered by said plaintiffs and exonerating Fermín
Irizarry, the codefendant and father of the minor, from
liability.

[1] Félix Álvarez Seda was married and had a son but these heirs do
not appear as parties in the litigation.

Plaintiffs appealed and the main question for decision is whether under the facts of this case the codefendant Fermín Irizarry is liable for the damages caused by his minor son Gilberto.

Section 1802 of the Civil Code provides that a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damages so done. 31 L.P.R.A. § 5141. And § 1803 of that Code provides that this obligation shall be demandable not only for personal acts and omissions, but also for those of the persons for whom they should be responsible. 31 L.P.R.A. § 5142. Insofar as pertinent, said section reads:

"The obligation imposed by the preceding section [1802] is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

". . . . . . . .

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

Our case law has recognized that the liability of the parents which arises under § 1803 is based on the own fault or negligence of the parents, and not on that of the children, and that said liability is of a primary, not secondary, nature. "Such fault or negligence of the parents is related to their duty to exercise vigilance over the minor children who live with them, to duly discipline them and to provide them with a proper education and environment." *Cruz* v. *Rivera*, 73 P.R.R. 632, 636; *The Conjugal Partnership, etc.* v. *Cruz*, 78 P.R.R. 335, 344. We have also stated that the parents are not *sine qua non* guarantors of the acts of their children; that each specific case must be determined by its special circumstances, and the facts of each case must be weighed in order to determine whether or not the parents were guilty

of negligence, that is, whether the acts of the child are due to the parents' failure in their duty to watch, reprimand, discipline and educate. *Cruz* v. *Rivera, supra.*

Section 1803, *supra*, establishes a *juris tantum* presumption of fault in the cases provided against the persons therein enumerated. When liability is demanded from the parents or any of the persons enumerated in said section, their fault or negligence need not be determined. The burden rests with them to prove that they were not guilty of fault or negligence in order not to be held liable; *Conjugal Partnership* v. *Cruz, supra*, except, of course, where from the very evidence of the plaintiff it appears that the parents were not negligent. *Cruz* v. *Rivera, supra.*

 Bearing in mind the former principles we shall now determine whether the codefendant Fermín Irizarry was guilty of fault *in vigilando* and did not teach his son discipline.

The lower court found proved, and its conclusion is amply supported by the evidence, that said defendant Fermín Irizarry "has always taken pains to give them (his children) the best education possible within his economic limitations"; that the codefendant never set bad examples to his children; that "Gilberto Irizarry never before had used firearms nor had been involved in fights, and that he was an intelligent, studious and serious boy who was in his third year of High School at the time of the occurrence." The uncontroverted evidence introduced by the defendants further established that the minor Gilberto Irizarry did not drink intoxicating beverages; that he spends his time in school and at home; that he goes to bed at 7:30 or 8:00 in the evening and that on Saturday he helped his father with the farm.

In the light of the particular facts in this case and of the doctrine laid down in *Cruz* v. *Rivera, supra*, we have to agree with the lower court in that the acts of the minor Gilberto Irizarry were not due to the failure of his father to watch, reprimand, discipline, and educate him. To be

more specific, we point out that the codefendant Fermín Irizarry usually kept his gun locked in a chifforobe; that prior to the day of the occurrences he had never taken it with him to his work and that on that day none of his children knew that he had taken or carried the gun with him. As to the wrongful act of the minor, Gilberto, the lower court found proved that he used the gun "on his own account, without being asked to do so by his father and without the latter having been able to prevent his son from firing those shots. The gun was near the place where his father was picking coffee, at the edge of the road which was used by Fermín Irizarry as well as by his children to go to that parcel of land, and the evidence discloses that when Gilberto Irizarry arrived at the place his father had already received a hard blow in the chest which had fractured two of his ribs, it being logical to presume that the latter was fighting at the time at a disadvantage with the deceased and had no opportunity to prevent his son from firing those shots at his opponent."

The minor's fault, which in this case we must admit, should not be mistaken for the father's fault since the father, properly speaking, is not responsible for his children's act but for his own fault. Commenting on the weight of the presumption of liability established by § 1384 of the French Civil Code,[2] which in this respect agrees with § 1803 of our

---

[2] Said section provides:

"One is liable, not only for the damage caused by the act itself, but also for that caused by the act of persons for whom one should be responsible or for the things which are under our custody. The father, and on his death the mother, is liable for the damages caused by the minors who live with them. —Masters and constituents are liable for the damages caused by their servants and agents while in the performance of their duties. —Masters and owners of establishments, for the damage caused by their pupils or apprentices while they are under their custody. —The liability referred to shall be actionable, unless the father, or mother, the masters and the owners of establishments prove that they have been unable to prevent the fact giving rise to said liability." (3 Colín y Capitant, *Curso Elemental de Derecho Civil*, 3d Spanish ed. (1951), pp. 854–55.)

Code, it is stated in the work *"Tratado de la Responsabilidad Civil"* by Henri Mazeaud, Vol. 1, p. 321:

"The scope of the presumption established by § 1384 having been defined, it remains only to specify the force of that presumption. How may parents elude the liability imposed on them by § 1384? What evidence to the contrary must be produced?

"The problem arises because it is obvious that the presumption is not *juris et de jure*. Evidence to the contrary is possible. Paragraph 5 of § 1384 expressly allows it and at the same time attempts to define it: 'Said liability shall be effective unless the father or the mother prove that they could not prevent the act which originated such liability.' What do these words imply? When the law establishes a presumption of liability, it comes under either one of the following two systems: either it permits the wrongdoer to be exonerated by showing that he has not committed any wrong; or it demands the wrongdoer to show that it was due to an extraneous cause such as *force majeure* or the fault of the victim. Which is in this case the proof required? Is it only the absence of fault? Or is it, on the contrary, the proof of *force majeure?* Are parents exonerated by showing that they have exercised due vigilance over their child and have given him a good education, or do they elude liability merely by proving that it was absolutely impossible to foresee and prevent the damage?

"The preliminary work of the French Civil Code is not altogether clear on this point. Bertrand de Greuille, in his report to the Tribuneship declares: 'If the fathers or mothers actually prove that it was impossible for them to prevent the act complained of, the guarantee then disappears because *the impossibility which has been satisfactorily proved is equivalent to force majeure,* leaving no room for any action on behalf of the victim of the damage.' It seems that by this language the parents are not exonerated unless there is *force majeure,* although the term *is equivalent* leaves the door open for discussion. But Tarrible, in his speech to the Legislative Body confines himself to the lack of fault: 'The liability established by § 1384 ceases with respect to everyone if they prove that they could not prevent the act originating it. In effect, the liability cannot affect *those who are exempt from any reproach.'*

"It is in this latter sense, that jurisprudence has expressed itself and correctly so. The liability established by paragraph 2 of § 1384 is based on the duties flowing from the *patria potestas;* once those duties have been faithfully discharged there is no reason for repealing the common law. It is not, therefore, essential for the parents to prove the existence of *force majeure,* the impossibility of foreseeing the damage and of preventing it, the *unforeseeable and invincible* event. Parents are exonerated once they show that a normal being would have educated and watched over his child as they educated and watched their own, in a word, once they prove that there has been neither lack of vigilance nor lack of education."

And at page 324 of the same volume we read:

"Once the *rules governing the liability* established by the second paragraph of § 1384 are laid down, it is easy to determine the ground for such liability.

"Liability ceases when the parents prove that they are free from fault and only in that instance. Hence it necessarily follows that the liabililty is based on the fault committed by the parents: lack of vigilance or poor education.

"Such is precisely the basis established by the framers of the French Civil Code. Treilhard wrote, referring in a general way to cases of liability for the act of another, but specifically alluding to the parents: 'Those on whom this liability is imposed, must blame themselves in the best of cases, some for weakness, others for poor election and all of them for negligence: Blessed those whose conscience does not reproach them for having infused bad principles and set worse examples! The parents are able to delve into the extent and sanctity of their duties. The life which our children receive from us ceases to be a benefit if we do not rear them in virtue and make of them good citizens.' 'This obligation, Bertrand de Greuille declared, is vinculated to the power, to the authority granted by law to the parents over their minor children, to the duties imposed on them with a view to the perfection of the education of those children, to the necessity that parents watch over the conduct of their children, with the zeal, the care, the interest which should underlie the hope for happiness for their children as well as the tender love they profess them.' 'Parents, masters and traders', Tarrible stated, 'are invested with sufficient authority to keep their subordinates within the limits of the

duty and respect due to another's property. When the sub-ordinates go beyond those limits, such trespass is reasonably attributed to the laxity of the domestic discipline entrusted to the father, the mother, the constituent, the master and the trader. This laxity is a fault.'

"The fault of the parents being the basis of the liability established by the second paragraph of § 1384 of the French Civil Code, we may ask ourselves why the common law rules have been repealed, why has it been deemed essential to pre-sume the existence of that fault, why should the victim be dis-pensed of the need to establish it. It is easy to understand the reason. Frequently, the child's victim knows nothing of that child prior to the infliction of the damage, he knew neither the child nor his parents. How then may the victim be required to establish the manner in which that child was sur-veilled or educated? Most of the time he would encounter a real impossibility. On the contrary, it is easier for the parents to furnish the court with the elements that will aid it in deciding whether or not there was lack of vigilance or educa-tion. That is why the burden of proof has been inverted. It obeys to the special nature of the faults which serve as ground for the parents' liability.

"We thus see that the liability of the parents, provided by the second paragraph of § 1384, is not, properly speaking, a liability for *the act of another*. Parents do not account for the act of their children but for their own fault.

"Therefore, it is necessary to reject at least in this respect, the theory of risk; the fault continues to be an essential con-dition for liability; the only difference lies in that such fault is presumed."

The evidence of the defendant Fermín Irizarry having destroyed the presumption of fault, the judgment that exonerated him from liability is correct and must not be reversed.

Insofar as respects the judgment rendered against the minor Gilberto Irizarry, we believe that in view of all the attendant circumstances we must not disturb the dis-cretion of the lower court in fixing the amount of compensa-tion granted to the plaintiff appellant.

The judgment will be affirmed.